FILED
UNITED STATES DISTRICT COURT
SANTA FE, NEW MEXICO

JUN 30 2004

Robert M. March
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MEDICAL PROTECTIVE COMPANY,

    Plaintiff,

vs.                                                                                           Civ. No. 96-1623- MV/ACT

ANNA NIETO, BETTY DELOSSANTOS,
PATRICK SANCHEZ, SALLY NETSCH,
PHYLLIS DEBAUN, MARY GONZALES,
QUADRAT KAPOOR, M.D., ORSON
TRELOAR, RON SHAFER, JAMES
NOBLE, Individually and In Their Official
Capacities and EASTERN NEW MEXICO
MEDICAL CENTER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Medical Protective Company's Motion for Summary Judgment, filed July 31, 2002, **[Doc. No. 48]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED in part**.

### BACKGROUND

This case involves Plaintiff Medical Protective Company's ("MedPro") obligation to defend and indemnify its insured, Dr. Qudrat Kapoor, under a Professional Liability Policy for a judgment against Dr. Kapoor for creating a sexually and/or racially hostile work environment, retaliating for constitutionally protected speech, and intentionally inflicting emotional distress.

A.    **Underlying Litigation**

Dr. Kapoor was the medical director at Eastern New Mexico Medical Center ("ENMMC"). Although not employed by ENMMC, Dr. Kapoor had a contractual agreement with ENMMC granting him professional privileges, providing him with leased office space, and maintaining his patient files. Dr. Kapoor treated patients of ENMMC, oversaw ENMMC employees' treatment of patients, and trained ENMMC employees. Dr. Kapoor also had some influence over the staffing decisions of ENMMC.

Anna Nieto, Betty DeLosSantos, Patrick Sanchez, Sally Netsch, Phyllis DeBaun, and Mary Gonzales (collectively the "Nieto Plaintiffs") were employees of ENMMC who, at various times, worked in Dr. Kapoor's department. On August 16, 1996, the Nieto Plaintiffs filed suit against Dr. Kapoor, ENMMC, and other supervisors at ENMMC, alleging racial and sexual discrimination by Dr. Kapoor during their employment at ENMMC ("underlying litigation").

The Nieto Plaintiffs settled their claims against all defendants except Dr. Kapoor. The claims against Dr. Kapoor proceeded to a bench trial in February, 2000. On March 17, 2000, the Court entered its judgment in favor of all of the Nieto Plaintiffs except Ms. Nieto and against Dr. Kapoor in the amount of $3,750,000, of which $1,875,000 was compensatory damages and $1,875,000 was punitive damages. *Nieto v. Kapoor*, 182 F.Supp.2d 1114 (D.N.M. 2000). The Court found that Dr. Kapoor had created a sexually and/or racially hostile work environment, had retaliated against the Nieto Plaintiffs for constitutionally protected speech, and had intentionally inflicted emotional distress. The Court made the following relevant findings of fact and

conclusions of law:

1. While working in Radiation Oncology, Plaintiffs' ... medical supervisor was Dr. Qudrat Kapoor. Dr. Kapoor supervised the patient treatment and care which was the majority of Plaintiffs' work.

2. Dr. Kapoor ... directed patient care and treatment efforts within the Radiation Oncology Department.

3. Dr. Kapoor .. directed most of the Radiation Oncology employees' work.

4. Under ENMMC Policies and Procedures, Dr. Kapoor was responsible for:

   * Ordering necessary treatment modes for patients;

   * Developing standing orders for treatment of potential complications of radiation therapy;

   * Informing Radiation Oncology staff of new developments in treatment and updating their knowledge of radiation treatment protocols;

   * Establishing goals of treatment for each individual patient and informing staff personnel of the goals and the expected outcomes; and

   * Educating the medical staff in the care of the cancer patient.

5. Dr. Kapoor's conduct ... was intentional, malicious and willful ... [and] can be seen as nothing but motivated by evil motive or intent. (internal punctuation and case cite omitted).

Dr. Kapoor appealed the judgment, which was affirmed by the Tenth Circuit. *Nieto v. Kapoor*, 268 F.3d. 1208 (10th Cir. 2001). Prior to the trial of the underlying litigation, Dr. Kapoor filed for relief under Chapter 7 of the Bankruptcy Code.

**B.   Professional Liability Policy**

At all relevant times, Dr. Kapoor was insured under a Professional Liability Policy issued

by MedPro. The Professional Liability Policy provides that:

> IN CONSIDERATION of the payment of the premium of which is hereby acknowledged, and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate.
>
> IN ANY CLAIM FOR DAMAGES, AT ANY TIME FILED, BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED, BY THE INSURED OR ANY OTHER PERSON FOR WHOSE ACTS OR OMISSIONS THE INSURED IS LEGALLY RESPONSIBLE, IN THE PRACTICE OF THE INSURED'S PROFESSION DURING THE TERM OF THIS POLICY: EXCEPT this policy does not cover
>
> * * *
>
> 2. payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act;
>
> * * *
>
> 6. any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured.

Dr. Kapoor tendered the underlying litigation to MedPro for defense and indemnification under the Professional Liability Policy. MedPro assumed the defense of the claims against Dr. Kapoor under a reservation of rights and instituted this declaratory judgment action on November 21, 1996, to determine its rights and obligations under the Professional Liability Policy.

On August 11, 1997, the Court entered an Order staying the declaratory judgment action until final disposition of the underlying litigation. This Order was subsequently extended until all rights of appeal of the judgment entered in the underlying litigation had been fully exhausted.

All rights of appeal of the judgment entered in the underlying litigation are fully exhausted and MedPro now moves for summary judgment on its duty to defend and indemnify

Dr. Kapoor under the Professional Liability Policy. Briefs in opposition to MedPro's motion have been filed by Nieto Creditors Patrick Sanchez, Sally Netsch and Mary Gonzales and the bankruptcy trustee for the estate of Dr. Kapoor.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file,

designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

The question before the Court is whether MedPro is required to indemnify Dr. Kapoor for damages resulting from the underlying litigation and, if not, is MedPro entitled to reimbursement of the defense expenses it paid on behalf of Dr. Kapoor in the underlying litigation. MedPro asserts that it is entitled to a judgment as a matter of law that the Professional Liability Policy does not cover the acts and omissions that form the basis for the judgment against Dr. Kapoor in the underlying litigation, or, in the alternative, that it is entitled to judgment because the acts and omissions that form the basis for the judgment against Dr. Kapoor in the underlying litigation are excluded from coverage under the policy.

In a diversity action, the court applies the substantive law of the forum state. *See Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 985 (10th Cir. 1998). Under New Mexico law, the court's interpretation of an insurance policy is guided by general principles of contract law. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 18, 945 P.2d 970, 976 (N.M. 1997) ("[I]nsurance contracts are construed by the same principles which govern the interpretation of all contracts.") (internal quotation marks and citations omitted). "[T]he obligation of a liability insurer is

contractual and is to be determined by the terms of the policy." *Safeco Ins. Co. of Am., Inc. v. McKenna*, 565 P.2d 1033, 1037 (N.M. 1977). If a policy is clear and unambiguous, the court does not construe the terms; rather, it merely gives the terms their usual and ordinary meaning. *See W. Commerce Bank v. Reliance Ins. Co.*, 732 P.2d 873, 875 (N.M. 1987); *Ivy Nelson Grain Co. v. Commercial Union Ins. Co.*, 453 P.2d 587, 589 (N.M. 1969). A contract may be ambiguous if the meanings of terms are not obvious, or if the contract is "reasonably and fairly susceptible of different constructions." *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 1999-NMSC-006, ¶ 27, 976 P.2d 1, 12 (N.M. 1998).

If an ambiguity exists in an insurance contract, the court must determine what a reasonable person in the insured's position would have understood the term to mean. *See Phoenix Indem. Ins. Co. v. Pulis*, 2000-NMSC-023, ¶ 23, P.3d 639, 646 (N.M. 2000). Contracts are construed liberally in favor of the insured and exclusion clauses in insurance policies are narrowly construed. In construing the terms of the policy, the court may use all available extrinsic evidence to interpret ambiguities, including "the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent." *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1236 (N.M. 1993).

### A. The Acts That Formed the Basis for the Judgment Against Dr. Kapoor in the Underlying Litigation Are Covered Under the Professional Liability Policy.

The first step in the Court's analysis is to determine if Dr. Kapoor's actions fall within the coverage of the Professional Liability Policy. The Professional Liability Policy provides coverage for 1) any claim for damages, 2) based on professional services rendered 3) in the practice of the insured's profession 4) during the term of the policy. There is no dispute that the

events at issue in the underlying litigation occurred during the term of the policy.

The term "professional services" is not defined by the policy. However, in *New Mexico Physicians Mut. Liab. Co. v. LaMure*, 860 P.2d 734, 737-38 (1993), the New Mexico Supreme Court stated that "'professional services' in the context of malpractice insurance coverage do not include all acts of a professional. Rather it is the professional nature of a particular act by an individual that qualifies conduct as 'professional services.'" *Id.* at 739. Therefore, under New Mexico law, the Court must determine if Dr. Kapoor's acts that gave rise to the judgment in the underlying litigation were of a professional nature.

MedPro asserts that a physician's "professional services" are limited to services provided directly to his patients. New Mexico law, however, does not take such a narrow view of the "professional services" rendered by a physician. In determining if an exclusion for "professional services" precluded coverage for injuries a patient suffered when a physician's untrained and unsupervised assistant gave the patient a contraindicated injection of estrogen, the New Mexico Supreme Court held that the hiring, training, and supervising of employees who render care to patients requires the use of a physician's professional judgment and comprises one aspect of the medical services a physician offers to his patients. *Millers Casualty Ins. Co. of Texas v. Flores*, 876 P.2d 227, 231 (1994) ("As a physician, Dr. Winkworth had to rely on his professional judgment to decide whether [his employee] was adequately trained and competent enough to provide care to his patients. Under these circumstances, Dr. Winkworth's hiring, training, and supervising decisions involved his professional judgment . . . The hiring and supervision of employees to assist in giving care to his patients constituted an integral part of providing medical services to these patients."); *see also Duncanville Diagnostic Center, Inc. v. Atlantic Lloyd's Ins.*

*Co. of Texas*, 875 S.W.2d 788, 791-92 (Tex. App. 1994)(considering similar professional services exclusion and finding that supervising employees constitutes a vital part of providing medical services).

Having determined that New Mexico law recognizes that supervising employees is part of a physician's professional services, the Court must determine if Dr. Kapoor's wrongful acts toward the Nieto Plaintiffs occurred while Dr. Kapoor was rendering professional services. The Court in the underlying litigation found that Dr. Kapoor's supervision and training of the Nieto Plaintiffs was permeated with racial and sexual bias and harassment that was sufficiently severe and pervasive to create a hostile work environment. It is impossible to separate Dr. Kapoor's actions properly supervising and training his employees and his actions improperly using his position as a supervisor with authority over subordinates to create a hostile work environment. Accordingly, the Court finds this case is more properly considered under the line of cases finding the improper conduct inexplicably intertwined with professional services.[1] *See, e.g., St. Paul Fire & Marine Ins. Co. v. Asbury*, 720 P.2d 540, 542 (Ariz. Ct. App. 1986) (holding that a gynecologist who intentionally and improperly manipulated patients' genitalia during routine gynecological examinations was covered by his professional liability insurance because his tortious acts were "intertwined with and inseparable from the services provided").

The wrongful acts committed by Dr. Kapoor were intertwined with and inseparable from

---

[1] The "inextricably intertwined" analysis was questioned, but not rejected, in *LaMure. LaMure*, 860 P.2d at 739 ("we are uncertain of this test's workability or its support in public policy. Regardless of whether this sort of analysis is useful in other situations, we are certain that LaMure's medical treatment of Kristopher's thumb was not 'inextricably intertwined' with his sexual assault of Kristopher such that the assault may reasonably be considered 'professional services.'").

his supervision of the Nieto Plaintiffs as part of his professional services. This distinguishes the facts of this case from the facts present in *LaMure*, where there was a clear line delineating the end of the exercise of a physician's professional services and the beginning of a wrongful sexual assault. *LaMure*, 860 P.2d at 739 ("When LaMure stopped examining [the minor child's] thumb and began sexually assaulting him, LaMure's rendering of professional services ended."). Thus, the Court concludes that the wrongful acts of Dr. Kapoor were performed while rendering professional services and are covered by the Professional Liability Policy.

### B. The Professional Liability Policy Excludes Coverage for the Wrongful Acts of Dr. Kapoor.

The remaining question before the Court is whether an exclusion in the Professional Liability Policy precludes coverage for the wrongful acts of Dr. Kapoor. The parties to an insurance contract may validly agree to extend or limit insurance liability risks. *Safeco*, 565 P.2d at 1036. Exclusions in insurance policy coverage provisions that are clear and unambiguous and that do not conflict with public policy expressed by statute will be enforced. *Jimenez v. Foundation Reserve Ins. Co.*, 757 P.2d 792, 794 (N.M. 1988).

The Professional Liability Policy has two relevant exclusions: willful tort and punitive damages.

#### 1. Willful Tort

The Professional Liability Policy excludes indemnity, but not defense, for claims for damages incurred by the performance of a willful tort. The parties dispute whether the creation of a hostile work environment in violation of Section 1983 is a willful tort. The United States Supreme Court has stated, however, that "there can be no doubt that claims brought pursuant to

§ 1983 sound in tort." *City of Monterey v. Del Monte Dunes at Monterey, Ltd*, 526 U.S. 687, 709 (1999); *see also Heck v. Humphrey*, 512 U.S 477, 483 (1994) ("We have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability."). The question of whether a hostile work environment claim is necessarily a willful tort, as opposed to a negligent tort, need not be reached by the Court because Dr. Kapoor's acts were found in the underlying litigation to be "intentional, malicious and willful" and "motivated by evil motive or intent."

Dr. Kapoor's intentional creation of a hostile work environment in violation of § 1983, intentional infliction of emotional distress, and retaliation for constitutionally-protected speech are all willful torts that are excluded from coverage under the Professional Liability Policy.

### 2.     Punitive Damages

The Professional Liability Policy excludes coverage for punitive damages. The parties agree that there is no coverage for the punitive damages portion of the judgment against Dr. Kapoor.

### C.     Duty to Defend

MedPro seeks recovery of the amounts it expended defending Dr. Kapoor in the underlying litigation. Because the Court has found that Dr. Kapoor's acts fall under the coverage of the policy but coverage is excluded by the willful torts exclusion, which specifically states that defense costs for willful torts are covered, MedPro is not entitled to reimbursement of the monies it expended defending Dr. Kapoor in the underlying litigation.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Medical Protective Company's Motion for Summary Judgment, filed July 31, 2002, **[Doc. No. 48]** is hereby **GRANTED in part**. The Court hereby declares the following:

1. Plaintiff Medical Protective Company owes Dr. Qudrat Kapoor no duty of indemnification for the judgment obtained in *Nieto v. Kapoor*, No. Civ-96-1225 MV/JHG (D.N.M. 1996) under the Professional Liability Policy issued by Plaintiff to Dr. Kapoor. 2. Plaintiff Medical Protective Company has a duty to defend Dr. Qudrat Kapoor against the claims raised in *Nieto v. Kapoor*, No. Civ-96-1225 MV/JHG (D.N.M. 1996) under the Professional Liability Policy issued by Plaintiff to Dr. Kapoor.

In all other respects, Plaintiff's motion is denied.

Dated this 30th day of June, 2004.

MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE


Attorney for Plaintiff:
　　Gregory Steinman, Esq.

Attorneys for Bankruptcy Trustee:
　　William H. Carpenter, Esq.
　　David J. Stout, Esq.

Attorney for Nieto Creditors:
　　Kathryn Hammel, Esq.